2026 IL App (1st) 241172-B

Fourth Division
Filed July 23, 2026

No. 1-24-1172

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) | |
| v. | ) ) | No. 02 CR 2751201 |
| ANDRES REYES, | ) ) | The Honorable Marc W. Martin, |
| Defendant-Appellant. | ) ) | Judge, presiding. |

JUSTICE OCASIO delivered the judgment of the court, with opinion.
Justice Lyle concurred in the judgment and opinion.
Presiding Justice Navarro dissented, with opinion.

**OPINION**

¶ 1    In 2004, Andres Reyes was sentenced to 75 years' imprisonment for first degree murder and attempted first degree murder. At the time of the offenses, he had been 19 years old. Fourteen years after his convictions and sentences were affirmed on direct appeal, Reyes filed an initial postconviction petition claiming that mandating a *de facto* life sentence despite his youthful characteristics, as applied to him individually, violated article I, section 11, of the Illinois Constitution. See Ill. Const. 1970, art. I, § 11. The petition was dismissed on the State's motion. We hold that his claim is not barred by *res judicata* or forfeiture where it was not (and could not have been) raised on direct appeal, that he adequately pleaded that the delay in filing his petition was not attributable to culpable negligence, and that he made a legally sufficient showing that his sentence violated the proportionality and restoration clauses, but not that he was denied his right

to the effective assistance of counsel at sentencing. We therefore reverse in part and remand for an evidentiary hearing.

¶ 2                                    I. BACKGROUND

¶ 3        On December 2, 2000, Reyes, then 19 years old and a member of the Latin Kings, found himself embroiled in a fight in front of his Palatine home with members of the Suernos 13 gang. He ran across the street to retrieve a gun from under a dumpster, and the rival gang members fled. Reyes, still armed, got in his sister's car and started driving around the neighborhood, looking for other Suernos 13s. He found two—Arnulfo Munoz and Emigdio Hernandez—and shot at them, striking and killing Munoz. After the killing, he fled with his girlfriend and daughter to Mexico. Two years later, after being arrested in El Paso, Texas, he confessed to the shooting. In 2004, a jury convicted him of first degree murder and attempted first degree murder.

¶ 4        Reyes's convictions carried sentences of 45 years to life for first degree murder (with the mandatory firearm enhancement) and 6 to 30 years for attempted murder. The sentencing hearing was brief. The pretrial investigation report disclosed that Reyes had no prior criminal history.[1] According to the report, Reyes had moved to the United States in 1988 with his parents and two older sisters. He recalled having a good childhood and said that he had not been abused or neglected. He also said he had a good relationship with his parents. He was expelled during his freshman year of high school for gang activity, and he did not continue his education. The only other evidence presented at the sentencing hearing were two victim impact statements. The court sentenced him to 65 years for first degree murder and 10 years for attempted murder, running the sentences consecutively as required by law, resulting in an aggregate term of 75 years.

¶ 5        On direct appeal, Reyes challenged only his sentence, which he argued was excessive in light of his young age, lack of criminal background, the circumstances of the offense, his remorse, and his potential for rehabilitation. He also contended that the trial court had ignored the constitutional

---

[1]    The defense waived a presentence investigation report, noting that Reyes had been in custody since his arrest and, therefore, there was no additional information to be reported.

goal of restoration to useful citizenship. See *id.* Finding that the court's chosen sentence was not an abuse of discretion, we affirmed. See *People v. Reyes*, 363 Ill. App. 3d 1198 (2006) (table) (unpublished order under Illinois Supreme Court Rule 23). Reyes sought no further review.

¶ 6       In 2020, Reyes filed a *pro se* petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)). The petition alleged that, at the time he committed the murder and attempted murder involved here, "his 19 year old brain development was no different than that of a juvenile," rendering his mandatory sentence of *de facto* life without parole unconstitutional under the eighth amendment of the United States Constitution and article I, section 11, of the state constitution. See U.S. Const., amend. VIII; Ill. Const. 1970, art. I, § 11.

¶ 7       In support of this claim, Reyes attached a report, dated June 9, 2020, prepared by developmental psychologist Dr. James Garbarino. As written, Dr. Garbarino's report functions primarily as a mitigation analysis, focusing on explaining the psychological factors that led Reyes to chase and shoot at Munoz and Hernandez and showing that, in spite of his crime, he is a good candidate for rehabilitation and eventual release. As part of that analysis, the report discusses various circumstances in Reyes's life that adversely affected his development and maturation.

¶ 8       According to the report, Reyes suffered significant physical and psychological abuse as a child. He experienced rejection and abandonment when his father left Mexico for the United States without warning. After he and the rest of his family joined his father in the late 1980s, his parents "were psychologically unavailable to him to a serious degree." His mother worked long hours, leaving him unattended, and his father would come home in the evening drunk and sometimes violent. Both parents beat their children as a means of discipline—including for offenses such as wetting the bed—sometimes "really hurt[ing]" him or his sisters. He also regularly witnessed his parents fighting to the point where he thought they were trying to kill each other. Dr. Garbarino emphasized the psychological component of abuse, explaining that it is the "most significant in producing developmental damage."

¶ 9       The report also detailed various childhood trauma Reyes experienced outside the home. He joined the Latin Kings when he was 12 years old. Like his parents, the gang used physical violence

as discipline. During childhood and adolescence, he also "had multiple firsthand encounters with violence," experiencing many of his friends hurt or killed in their high-violence neighborhood. According to Dr. Garbarino, research showed that "frequent exposure to trauma in childhood can have effects on the development of the brain," affecting both executive function and emotional regulation.

¶ 10　　　In his report, Dr. Garbarino opined that Reyes's "history of adversity growing up can be expected to have compromised his maturation" and that "although he was tried as an adult in the criminal justice system, he was best understood as 'an untreated traumatized child inhabiting and controlling the body of a teenager.' "[2] He also opined that Reyes's criminal conduct "reflected immature impulsiveness due to his brain development."

¶ 11　　　The court advanced the petition to the second stage and appointed counsel, who did not initially make any amendments. The State moved to dismiss the petition, arguing that Reyes's eighth amendment claim was without merit because he was over the age of 18 years at the time of the offense and that his proportionality and restoration clauses claim was untimely and barred by the *res judicata* effect of the decision on direct appeal.

¶ 12　　　Counsel filed a response to the State's motion to dismiss and then a supplemental petition largely tracking the response. The supplemental petition incorporated the *pro se* petition and added a new claim that trial counsel was ineffective for not presenting age-based mitigation evidence at sentencing. The supplemental petition also argued that Reyes was not culpably negligent for filing his petition past the deadline because it was based on developments in case law that had not been available to him at the time of his trial and sentencing.

¶ 13　　　The supplemental petition was supported by a handwritten affidavit made out by Reyes. In it, Reyes asserted that he did not become aware that he would be able to raise an age-based sentencing

---

[2]　We note that this appears to be something of a stock phrase used by Dr. Garbarino. See *People v. Lowe*, 2026 IL App (1st) 241544-U, ¶ 23 (quoting same language from a report prepared by Dr. Garbarino); *People v. Croom*, 2022 IL App (4th) 210410-U, ¶ 38 (same); see also *People v. Green-Hosey*, 2025 IL App (2d) 240284, ¶ 50 (collecting cases criticizing Dr. Garbarino's opinions).

challenge until the Illinois Supreme Court decided *People v. Harris*, 2018 IL 121932. He determined that the record of his trial and sentencing lacked the kind of factual development that *Harris* called for, so he began doing research on science, juvenile maturity, and brain development, a process that took some time due to his lack of access to the internet. He also knew that he would need to show how that science applied to the specific facts and circumstances of his case. At some point, his daughter's mother put him in touch with Dr. Garbarino, with whom he corresponded for a period of several months so he could analyze Reyes's developmental history. Upon receiving Dr. Garbarino's report, which opined that that Reyes "met the criteria," he went about investigating, researching, and drafting his claims *pro se* and "immediately" filed his petition supported by independent corroborative evidence.

¶ 14    The State filed a supplemental motion to dismiss arguing that Reyes's ineffective assistance claim was untimely, barred by *res judicata*, and in any event without merit because the supplemental petition failed to show that he was prejudiced by counsel's alleged failure to raise an age-based challenge to Reyes's sentence.

¶ 15    After a hearing, the court granted the State's motion and dismissed the petition. As relevant to this appeal, it found that Reyes's proportionality and restoration clauses claim was untimely and *res judicata*, and it found that Reyes forfeited his challenge to trial counsel's representation at sentencing by not challenging it on direct appeal.

¶ 16                               II.  ANALYSIS

¶ 17    Reyes is appealing from the dismissal of his postconviction petition on the State's motion. See 725 ILCS 5/122-5 (West 2020). A motion to dismiss tests the legal sufficiency of the petition by asking whether the defendant's allegations, if proven at an evidentiary hearing, would entitle him to relief. *People v. Domagala*, 2013 IL 113688, ¶ 35. In answering that question, the petition's well-pled allegations and any supporting evidence are assumed to be true so long as they are not positively rebutted by the record. *People v. Robinson*, 2020 IL 123849, ¶ 45. Review is *de novo*. *People v. Moore*, 2023 IL App (1st) 220919, ¶ 22.

¶ 18     In our original decision in this appeal, we affirmed the circuit court's dismissal. *People v. Reyes*, 2025 IL App (1st) 241172-U, *vacated* No. 132341 (Ill. Nov. 26, 2025) (supervisory order). We held that Reyes's claim that his sentence violates the proportionality and restoration clauses of our state's constitution (Ill. Const. 1970, art. I, § 11) was barred by *res judicata* because he challenged his sentence as excessive on direct appeal. *Reyes*, 2025 IL App (1st) 241172-U, ¶¶ 21-26. We also held that Reyes did not make a legally sufficient showing that he was denied the effective assistance of counsel at sentencing. *Id.* ¶¶ 28-32. The Illinois Supreme Court denied Reyes's petition for leave to appeal, but it vacated our judgment and directed us to reconsider our finding that Reyes's sentencing claim was *res judicata* in light of *People v. Spencer*, 2025 IL 130015. See *People v. Reyes*, No. 132341 (Ill. Nov. 26, 2025) (supervisory order). At our request, the parties have filed supplemental briefs on that issue.

¶ 19                    A. *Res Judicata* and Forfeiture

¶ 20     The State contends that, the merits of the petition notwithstanding, Reyes's claim is barred by the doctrines of *res judicata* and forfeiture. Postconviction proceedings exist to allow inquiry into allegations of constitutional error occurring at the original proceedings that were not, and could not have been, adjudicated on direct appeal. *People v. English*, 2013 IL 112890, ¶ 22. So, as a general rule, claims that were raised and decided on direct appeal are barred by *res judicata*. *Id.* Similarly, claims that could have been raised but were not are considered to have been forfeited. *Id.*

¶ 21     In our original decision, we found that Reyes's sentencing challenge was barred by *res judicata*. That holding was based on the premise that Reyes's excessive-sentence argument on direct appeal and his constitutional challenge in this postconviction proceeding were, fundamentally, the same claim. See *Reyes*, 2025 IL App (1st) 241172-U, ¶ 23. *Spencer* undermines that premise.

¶ 22     In *Spencer*, the defendant was directly appealing from his convictions for first degree murder, attempted murder, and home invasion and his aggregate sentence of 100 years. *Spencer*, 2025 IL

130015, ¶ 1. He was 20 years old at the time of the offense. *Id.* On appeal, the defendant argued that this 100-year sentence was a *de facto* life sentence that violated article I, section 11, of the Illinois Constitution as applied to him because it was imposed without consideration of the mitigating effect of his youth. *Id.* ¶ 23. The court rejected the premise that the defendant's sentence amounted to *de facto* life, finding that the defendant's eligibility for parole 20 years into his sentence gave him a meaningful opportunity for release. *Id.* ¶ 40. But that, the court found, was not dispositive of the defendant's as-applied challenge because article I, section 11, allows defendants to challenge sentences of any length, not just sentences that amount to *de facto* life without parole. *Id.* ¶¶ 42-43. Nevertheless, the court did not resolve the defendant's as-applied challenge. Relying on the "general principle that as-applied constitutional claims cannot ultimately succeed absent a sufficiently developed evidentiary record," the court found that "the proper venue" for the defendant's claim was in postconviction proceedings. *Id.* ¶ 45. It then pointedly held that the defendant was "not foreclosed" from raising his as-applied challenge in a future postconviction petition. *Id.* ¶ 46.

¶ 23　　*Spencer* did not directly concern the doctrine of *res judicata*, but it is nonetheless instructive because it makes clear that, when the record on direct appeal is not adequately developed to allow the court to resolve a young adult's age-based as-applied challenge to his sentence, the defendant is not precluded from raising that challenge in a later postconviction proceeding. This is consistent with the long-recognized principle that, in postconviction proceedings, "*res judicata* and forfeiture do not apply *** where facts relating to the claim do not appear on the face of the original appellate record." *People v. Blair*, 215 Ill. 2d 427, 450-51 (2005).

¶ 24　　Here, the record on direct appeal contained only the most basic facts about Reyes's background found in the bare-bones pretrial investigation report. His postconviction claim, however, is based on detailed factual information presented in Dr. Garbarino's report and other exhibits attached to Reyes's petition that was not found in the original appellate record. So, even if we assume that Reyes's excessive-sentence argument on direct appeal raised the same claim that he is advancing in this postconviction proceeding, his current claim is based on facts that did not

appear on the face of the original appellate record, so it is not barred by the *res judicata* effect of our decision on direct appeal. Similarly, to the extent that Reyes could have raised the kind of age-based constitutional challenge to his sentence on direct appeal, forfeiture does not bar him from raising that challenge here based on facts that, again, were not found in the original appellate record.

¶ 25    In so holding, we find *People v. Haines*, 2021 IL App (4th) 190612, and *People v. LaPointe*, 2018 IL App (2d) 160903, distinguishable. The defendants in those cases presented postconviction claims that did no more than repackage, using constitutional language, the same excessive sentence claims they had raised on direct appeal. *Haines*, 2021 IL App (4th) 190612, ¶¶ 18-22; *LaPointe*, 2018 IL App (2d) 160903, ¶ 63. Here, as we have just explained, Reyes's postconviction petition does not merely slap a new label on an old claim. It raises what is effectively a new claim based on facts that were not before us on direct appeal. It is therefore not barred by *res judicata* or forfeiture.

¶ 26                              B.  Timeliness and Culpable Negligence

¶ 27    The State next argues that Reyes's claim is barred by the Post-Conviction Hearing Act's statute of limitations. Where, as here, the defendant files a direct appeal but does not seek further discretionary view, a postconviction petition must be filed no more than six months after the date a petition for leave to appeal to the supreme court was due; otherwise, it is considered untimely. *People v. Johnson*, 2017 IL 120310, ¶ 24; see 725 ILCS 5/122-1(c) (West 2020). We issued our decision in Reyes's direct appeal on March 22, 2006. As Reyes did not seek rehearing, the petition for leave to appeal would have been due 21 days later, on April 12, 2006. See Ill. S. Ct. R. 315(b) (eff. Jan. 1, 2005). Hence, his postconviction petition was due six months after that, on October 12, 2006. See *Johnson*, 2017 IL 120310, ¶ 24. He did not file his petition until August 14, 2020. It was undeniably untimely.

¶ 28    That time limit, however, is not a strict one. "Although our criminal justice system needs finality in criminal litigation and judgments, it should not come at the expense of justice and

fairness." *People v. Boclair*, 202 Ill. 2d 89, 102 (2002). Section 122-1(c) therefore contains "a special 'safety valve' " (*People v. Bates*, 124 Ill. 2d 81, 88 (1988)) that permits a petition to be filed late if "the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 2020). Culpable negligence "contemplates something greater than ordinary negligence and is akin to recklessness." *Boclair*, 202 Ill. 2d at 108. Although it does not require intentional conduct, it does involve an indifference to, or outright disregard of, consequences. *Id.* at 106 (citing Black's Law Dictionary (7th ed. 1999). It implies conduct that can "fairly be labeled blamable or censorious." *People v. Rissley*, 206 Ill. 2d 403, 421 (2003). By construing culpable negligence broadly, this definition ensures that the safety valve "does not stand as empty rhetoric." *Id.* at 420.

¶ 29    Reyes alleged in his amended petition that he was not culpably negligent because his claim is based on case law—in particular, *Harris*, 2018 IL 121932—that developed long after his initial filing period expired and because, once that case law became available, he filed his petition within a reasonable length of time. At this stage of postconviction proceedings, the question is whether these allegations "are sufficient to establish a lack of culpable negligence." *Rissley*, 206 Ill. 2d at 418. We therefore treat the allegations as true and review their sufficiency *de novo*. *People v. Walker*, 331 Ill. App. 3d 335, 340 (2002).

¶ 30    Reyes's theory that he was not culpably negligent can be broken down into two distinct periods: before the supreme court decided *Harris* on October 18, 2018, and after it issued that decision.

¶ 31    The first period, which comprises the bulk of the delay in filing by far, spans the approximately 12 years that elapsed between the initial filing period in 2006 until the 2018 decision in *Harris*. According to Reyes's affidavit, he did not learn that he could raise the particular kind of sentencing challenge at issue here until *Harris* was decided and he could not have anticipated the legal developments that led to *Harris*. Assuming these allegations are true, they certainly show a lack of culpable negligence. Before *Harris*, the Illinois Supreme Court had not recognized that emerging adults might be able to show that their own neurological development was so like that

of a person under the age of 18 as to be entitled, under our state constitution's proportionality and restoration clauses, to the same protections extended to under-18 offenders in *Roper v. Simmons*, 543 U.S. 551 (2005), *Graham v. Florida*, 560 U.S. 48 (2010), and *Miller v. Alabama*, 567 U.S. 460 (2012). See *Harris*, 2018 IL 121932, ¶¶ 37, 45-46.

¶ 32    In arguing that Reyes's failure to anticipate *Harris* was culpably negligent, the State relies on case law holding that *Miller* and subsequent decisions did not provide defendants raising *Harris*-type claims the legal cause necessary to avoid the bar against filing successive postconviction petitions. See *People v. Moore*, 2023 IL 126461, ¶¶ 40-42. These cases are not controlling because cause and lack of culpable negligence are not the same thing.

¶ 33    In terms of Illinois postconviction law, cause is an element of the cause-and-prejudice test, which is the only statutory exception to the general prohibition against filing more than one postconviction petition.[3] See 725 ILCS 5/122-1(f) (West 2020). The obvious purpose of prohibiting successive petitions is to prevent the piecemeal litigation of postconviction claims. See *People v. Montanez*, 2023 IL 128740, ¶ 108. The cause-and-prejudice exception exists purely to ensure "fundamental fairness." *People v. McCoy*, 2026 IL 131565, ¶ 48. To satisfy the cause requirement, the defendant must establish that there was "some objective factor external to the defense that impeded [his] efforts to raise the claim in an earlier proceeding." *Montanez*, 2023 IL 128740, ¶ 77. Among other things, a defendant can establish cause by " 'showing that the factual or legal basis for a claim was not reasonably available to counsel.' " *Haines*, 2021 IL App (4th) 190612, ¶ 43 (quoting *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991)). Under this definition, a particular legal theory can be considered available, as a technical matter, even if it has not been recognized by a court or even raised by a creative attorney. See *id.* ¶¶ 44-45.

¶ 34    The exception to the Post-Conviction Hearing Act's statute of limitations is more permissive. It represents a legislative judgment that, except when the defendant's delay is not merely neglectful

---

[3]    The other exception, which applies to claims of actual innocence, is recognized solely in decisional law. *People v. McCoy*, 2026 IL 131565, ¶ 49.

but reckless or blameworthy—as might be the case when a defendant sits on a claim he knows he has—the remedial purpose of the Post-Conviction Hearing Act is more important than the State's interest in assuring that convictions are not susceptible to collateral attacks after a given period of time. See *Rissley*, 206 Ill. 2d at 421 (explaining how permitting late filings in the absence of culpable negligence furthers the aims of the Post-Conviction Hearing Act).

¶ 35    Objectively speaking, there may not have been an external impediment preventing Reyes from raising this claim during the initial filing period in 2006 because, whether or not he (or anyone else) recognized it, " 'the essential legal tools' " were already there. *Moore*, 2023 IL 126461, ¶ 42 (quoting *People v. Clark*, 2023 IL 127273, ¶ 93). But the question before us is not whether Reyes could have raised the claim in 2006; it is whether not raising it before *Harris* was issued in 2018 amounted to culpable negligence. And for him to have raised this claim during that period of time would have "require[d] a level of legal knowledge and expertise that veers into the improbable." *People v. Horshaw*, 2024 IL App (1st) 182047-B, ¶ 60. We would not find an experienced attorney ineffective for failing to anticipate *Harris*. *Id.* We can hardly fault Reyes—an indigent prisoner with an eighth grade education—for not doing better. Assuming the truth of his allegations, Reyes was not culpably negligent for failing to file this claim before *Harris* was decided.

¶ 36    The question becomes whether Reyes has shown that he was not culpably negligent for failing to file his petition for nearly two years after *Harris* was decided. In his affidavit, Reyes averred that *Harris* made clear that, to raise the claim contemplated by that decision, the limited facts found in the record on direct appeal would not be enough; he would need to put together a detailed factual basis to support his assertion that the brain science cited in *Miller* applied to him and to the circumstances of this offense. Lacking internet access, he had to rely on outside sources of information and traditional postal services, which took time. He was eventually put in touch with Dr. Garbarino, with whom he "corresponded for months" so Dr. Garbarino could do the necessary analysis and prepare a report. Once Reyes received Dr. Garbarino's June 9, 2020 report, which indicated that he "met the criteria," he did the investigation, research, and drafting necessary to

prepare his *pro se* petition, which he put in the mail at Hill Correctional Center on August 7, 2020—not even two months after Dr. Garbarino issued his report.

¶ 37    Taking Reyes's allegations as true, they show that he was not culpably negligent for the delay in filing his petition after *Harris* was decided. Once that decision was issued, Reyes had a choice: he could slap together a generic petition and file it, or he could take the time necessary to build a fact-specific case to support his claim that he was entitled to the benefit of *Miller*. Heeding *Harris*, he followed the latter course. A fact finder could easily find that his choice, by which he avoided presenting the court with an undeveloped claim that would have been doomed to dismissal, did not amount to culpable negligence.

¶ 38    In summary, Reyes's allegations show that he could not have been expected to even know that he could challenge his mandatory *de facto* life sentence as a 19-year-old offender until *Harris* and that, upon learning that he might be able to make that claim, he worked diligently to put together and then file a *pro se* petition that was well-grounded in the specific facts and circumstances of his own developmental history. Accepting those allegations as true, as we must, they show that he was not culpably negligent for not bringing this claim at an earlier point in time. That is all that Reyes has to show at this stage.

¶ 39                                    C.  Merits

¶ 40    Having dispensed with the procedural obstacles, we now consider whether, on the merits, Reyes has made a legally sufficient showing that, as applied to him, the statutes that mandated he receive a sentence of *de facto* life without parole violate the proportionality and restoration clauses of the Illinois Constitution.[4]

---

[4] Under the applicable sentencing statutes, Reyes's conviction for first degree murder, along with the finding that he personally shot and killed the victim, carried a sentence of 45 years to natural life without eligibility for good-time credit. 730 ILCS 5/3-6-3(a)(2)(i), 5-8-1(a)(1)(a), (a)(1)(d)(iii) (West 2000). The parties do not dispute that the mandatory minimum of 45 years constituted a *de facto* sentence of life without parole. See *People v. Buffer*, 2019 IL 122327, ¶ 41 (holding that sentences of 40 years or less are not *de facto* life sentences).

¶ 41    Statutes are presumed to be constitutional. To overcome that presumption, Reyes must clearly establish that the combination of sentencing statutes at issue here are invalid as applied to him. *People v. Williams*, 2024 IL 127304, ¶ 25. In the context of an emerging-adult claim under the proportionality and restoration clauses of the Illinois Constitution, that means he "must plead, and ultimately prove, that his or her individual characteristics require the application of *Miller*." *People v. Green-Hosey*, 2025 IL App (2d) 240284, ¶ 39, *appeal allowed*, No. 131560 (Ill. Sept. 24, 2025). In other words, he "must demonstrate that his *** own individual characteristics were so like those of a juvenile that receipt of a life sentence without the *Miller* safeguards was cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community." *Id.* ¶ 58 (citing *People v. Garcia*, 2024 IL App (2d) 210488-B, ¶ 14, and *People v. Wilson*, 2022 IL App (1st) 192048, ¶ 87).

¶ 42    In his petition, Reyes alleged that, at the time he committed the charged offenses, his brain was comparable to that of a juvenile offender, thus diminishing his culpability and enhancing his rehabilitative potential. That allegation is supported by Dr. Garbarino's report, which identified adverse events and environments in Reyes's childhood and—crucially—explained how those had hampered Reyes's psychological development, particularly in the areas of executive function and emotional regulation, which, according to Dr. Garbarino, are "crucial elements in effective, pro-social decision-making." In the report, Dr. Garbarino described Reyes, at the time of the shooting, as "an 'untreated, traumatized child inhabiting and controlling the body of a teenager.' " He also opined that Reyes "demonstrated immaturity of thought and emotional control, impetuous and impulsive action, and failure to appreciate the full consequences of his criminal behavior," all of which reflected a slower maturation process than Reyes would have experienced in a healthier environment. Taking all of this as true, we find that Reyes has made a legally sufficient showing that "his *** individual characteristics require the application of *Miller*," making the statutes that mandated a *de facto* sentence of life without parole, as applied to him, violative of the proportionality and restoration clauses.

¶ 43    The State argues that the account of Reyes's childhood presented in Dr. Garbarino's report is rebutted by the pretrial investigation report, which indicated that Reyes had a "good" childhood where he was not abused or neglected. At most, this is only an inconsistency between the evidence supporting Reyes's petition and the evidence that was before the court at his original sentencing hearing. An allegation is not positively rebutted by the record simply because it conflicts with evidence in the record. See *Robinson*, 2020 IL 123849, ¶ 60. To the extent that Dr. Garbarino's analysis conflicts with Reyes's self-report to a probation officer a month after his arrest, it presents a factual dispute that is meant to be resolved after an evidentiary hearing, not on the pleadings. *Domagala*, 2013 IL 113688, ¶ 46.

¶ 44    The State also argues that Reyes's *de facto* life sentence is fully justified by the severity of his conduct, which outweighs whatever rehabilitative potential he might have. This argument puts the cart before the horse. Reyes's claim is that, because his individual characteristics render him developmentally akin to an under-18 offender, he is entitled under the proportionality and restoration clauses to the benefit of *Miller*'s prohibition against mandatory sentences of life without parole for juveniles. If he proves that claim, the trial court will determine the appropriate remedy, which may include a new sentencing hearing. If *de facto* life without parole remains available as an option at any new sentencing hearing, the State will have the chance to make its case that, notwithstanding Reyes's rehabilitative potential, a *de facto* life sentence is appropriate.

¶ 45    Reyes's petition makes a substantial showing that his mandatory life sentence, as applied to him, violates the proportionality and restoration clauses of the Illinois Constitution. We therefore reverse the dismissal of his petition and remand for the State to file an answer and the court to hold an evidentiary hearing if necessary. See 725 ILCS 5/122-5, 122-6 (West 2020).

¶ 46                               D.  Ineffective Assistance

¶ 47    Finally, in our original decision, we held that Reyes's petition did not make a legally sufficient showing that he was deprived of the effective assistance of counsel at sentencing. The supreme court did not order us to reconsider that holding, and neither party has asked us to do so. We adhere

to our original finding that Reyes's petition did not make a legally sufficient showing that counsel was ineffective where, among other things, "counsel cannot be faulted for not introducing evidence of science not yet developed." *Reyes*, 2025 IL App (1st) 241172, ¶ 32.

¶ 48                                    III.  CONCLUSION

¶ 49        As it is based on facts not before us on direct appeal, Reyes's sentencing claim is not barred by *res judicata* or forfeiture. Further, assuming the truth of his petition's allegations and its supporting materials, Reyes has shown that the delay in filing his petition was not attributable to culpable negligence, and he has made a substantial showing that his mandatory sentence of *de facto* life without parole, as applied to his individual circumstances, violates the proportionality and restoration clauses of article I, section 11, of the Illinois Constitution of 1970. We therefore hold that the trial court erred by granting the State's motion to dismiss that claim. However, we hold that the trial court properly dismissed Reyes's ineffective-assistance claim.

¶ 50        Accordingly, we reverse the dismissal of Reyes's challenge to his sentence under the proportionality and restoration clauses, and we remand for further proceedings. We otherwise affirm.

¶ 51        Affirmed in part, reversed in part, and remanded.

¶ 52        PRESIDING JUSTICE NAVARRO, dissenting:

¶ 53        I respectfully disagree with the majority's conclusion regarding culpable negligence and would find that Reyes could have raised his as-applied proportionate penalties clause claim by the time the Post-Conviction Hearing Act's (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) statute of limitations expired on October 12, 2006.

¶ 54        Instructive is *People v. Macias*, 2026 IL App (1st) 242228-U, ¶¶ 2, 4, where a defendant, who was 18 years old at the time he committed first degree murder based on accountability, was sentenced to 42 years' imprisonment, with the sentencing occurring in 2004. The defendant unsuccessfully appealed to this court, and the supreme court denied his petition for leave to appeal. *Id.* ¶ 5. Based on the conclusion of his direct appellate proceedings, the defendant had until October

2009 to file a timely postconviction petition. *Id.* ¶ 19. Ultimately, he filed his petition in 2023, claiming that his 42-year sentence violated the proportionate penalties clause where the trial court failed to "consider[ ] his youthful characteristics at the time of the offense." *Id.* ¶ 7. Recognizing the amount of time that had elapsed between his direct appellate proceedings and when he filed his petition, the defendant argued that he was not culpably negligent for the delay. *Id.* ¶¶ 8, 23. He posited that, because Illinois case law extending *Miller*'s protections to young adults developed between 2019 and 2022, he was unable to file the petition until 2023. *Id.* On the State's motion, the circuit court dismissed the petition as untimely, finding that the defendant failed to show a lack of culpable negligence for the delay. *Id.* ¶ 11.

¶ 55      On appeal, in rejecting the defendant's argument that he was not culpably negligent because of recent development in *Miller*-based case law, this court noted that "those developments did not affect the law governing defendant's age-based proportionate penalties claim." *Id.* ¶ 23 (citing *People v. Moore*, 2023 IL 126461, ¶ 42). We observed that, because the defendant was 18 years old at the time he committed murder, "he has always been able to raise an age-based proportionate penalties challenge of his sentence." *Id.* (citing *People v. Clark*, 2023 IL 127273, ¶ 87). This court further observed that "[t]he proportionate penalties clause has existed since 1970 and 'Illinois cases have long held the proportionate penalties clause required the circuit court to take into account the defendant's youth and mentality in fashioning an appropriate sentence.' " *Id.* (quoting *Clark*, 2023 IL 127273, ¶ 92 (citing cases back to 1972)).

¶ 56      We asserted that,

> "[e]ven prior to *Miller* and the Illinois case law it produced, [the] defendant has always 'had the tools to construct a claim that his sentence violated the proportionate penalties clause because the sentencing judge did not take into account (1) his youth and (2) how his particular neurobiological development affected his maturity and decision-making.' " *Id.* (quoting *People v. Leach*, 2024 IL App (4th) 230298, ¶ 83).

In turn, this court found that the "[d]efendant could have raised his age-based proportionate penalties claim at his sentencing hearing in 2004, on direct appeal in 2006 or 2007," or by the time

a postconviction petition was due in October 2009. *Id.* Therefore, we concluded that the "defendant's petition fail[ed] to allege facts demonstrating that his delay in filing was not the result of his culpable negligence, so that exception does not excuse his untimely filing." *Id.* Consequently, this court affirmed the dismissal of the defendant's petition as untimely. *Id.* ¶¶ 23, 26.

¶ 57    Based on the rationale of *Macias*, I would likewise find that Reyes failed to allege sufficient facts showing he was not culpably negligent for the delay in bringing his proportionate penalties clause claim in a timely postconviction petition. Well before October 12, 2006—the deadline for Reyes to file a postconviction petition under the Act—Illinois courts acknowledged as-applied claims under the proportionate penalties clause and that the clause itself mandated trial courts to consider the defendant's youth and mental circumstances prior to sentencing. See *Clark*, 2023 IL 127273, ¶ 92; *People v. Haines*, 2021 IL App (4th) 190612, ¶¶ 46-47; *Macias*, 2026 IL App (1st) 242228-U, ¶ 23. In fact, as far back as 1894, our supreme court observed that it was "the law of nature" that there is "a marked distinction between persons of mature age and those who are minors," whom the court defined as persons between 16 and 21 years of age. *People ex rel. Bradley v. Illinois State Reformatory*, 148 Ill. 413, 422-23 (1894); see *Clark*, 2023 IL 127273, ¶ 92 (highlighting *Bradley*). "The habits and characters of the latter are, presumably, to a large extent as yet unformed and unsettled." *Bradley*, 148 Ill. at 423. Accordingly, the legal tools were available to Reyes to raise his proportionate penalties clause claim within the Act's statute of limitations.

¶ 58    The fact that Reyes posits his proportionate penalties clause claim is based not only on developments in the law but also on the emergence of new scientific evidence previously unavailable to him, including Dr. Garbarino's report, does not excuse Reyes's untimely filing. While Dr. Garbarino's report was certainly additional evidence to support his claim, scientific research existed in 2006 that Reyes could have utilized. See *People v. Searles*, 2024 IL App (1st) 210043-U, ¶ 14 (citing studies from 1999, 2001, 2003, and 2004 and observing that "research into young adult and adolescent brain development prior to" the defendant's trial in 2002 "recognized that brain development continues into an individual's 20s"). Reyes could have cited such studies

and applied them to his circumstances, which generally were known to him in 2006, when he was 25 years old, to raise a proportionate penalties clause claim. See *People v. Boclair*, 2025 IL App (1st) 240911-U, ¶ 43 (rejecting the defendant's argument that he could only have recently raised his proportionate penalties clause claim because a report from Dr. Garbarino "was not previously available to him" and finding that scientific research existed long before he obtained the report from Dr. Garbarino such that he should have raised the claim much "earlier"). The fact that Dr. Garbarino's report—the most individualized evidence supporting Reyes's proportionate penalties clause claim—was not obtainable at the time the Act's statute of limitations lapsed does not show a lack of culpable negligence on his part.

¶ 59    Given the foregoing, I would affirm the circuit court's dismissal of Reyes's proportionate penalties clause claim as untimely and decline to advance his petition to an evidentiary hearing.

***People v. Reyes*, 2026 IL App (1st) 241172-B**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 02-CR-2751201; the Hon. Marc W. Martin, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Manuela Hernandez, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (John E. Nowak, David H. Iskowich, and Whitney Bond, Assistant State's Attorneys, of counsel), for the People. |